## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**RICKY VINCENT PENDLETON,**

    **Plaintiff,**

**v.**                                                     **Case No. 2:15-cv-01903**

**WEST VIRGINIA DIVISION OF CORRECTIONS[1],**
**KELLI HINTE, SHERRIE SNYDER,**
**CHERYL CHANDLER, MICHAEL SHUMATE,**
**and PATRICK JANISZEWSKI,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are the following motions: the defendants' Motion to Dismiss Amended Complaint (which includes an alternative Motion for Summary Judgment) (ECF No. 23), the plaintiff's Motion for Summary Judgment (ECF No. 44), the plaintiff's Motion for Expedited Relief (ECF No. 47), the plaintiff's Motion for Expedited and Injunctive Relief (ECF No. 54), and the plaintiff's Motion for Injunctive Relief and Declaratory Judgment (ECF No. 57).

---

[1] The plaintiff included the West Virginia Division of Corrections ("WVDOC") as a defendant in the style of his Amended Complaint. However, the body of the Amended Complaint contains no specific allegations concerning the WVDOC and the plaintiff's subsequent documents have omitted the WVDOC from the style of the case. Furthermore, the plaintiff has not made any argument concerning the potential liability of the WVDOC in this matter. In light of the proposed findings herein that the Amended Complaint fails to state any plausible claim against the individual defendants, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint also fails to state a claim upon which relief can be granted against the WVDOC.

**PLAINTIFF'S ALLEGATIONS AND RELEVANT PROCEDURAL HISTORY**

This matter is proceeding on the plaintiff's Amended Complaint (ECF No. 8), filed on March 2, 2015. The plaintiff is an African-American prisoner incarcerated at the Mount Olive Correctional Complex ("MOCC"). The plaintiff, who already had several rule violations on his record, alleges that he was placed in administrative segregation after he was accused of having improper involvement with a female correctional officer, conduct which he disputes and for which he was not actually charged with a rule violation. The plaintiff further alleges that similarly situated Caucasian inmates were not placed in administrative segregation. Thus, the plaintiff contends that he has been treated in a discriminatory manner, in violation of his Fourteenth Amendment right to equal protection under the law.

Specifically, the plaintiff's Amended Complaint alleges that, on August 13, 2014, after being placed on detention for an unrelated rule violation, the plaintiff was served with a seizure form indicating that an incoming letter from Rebecca Hart had been seized by Lisa Boggs, a Mailroom Staff Supervisor II, and that the letter had been turned over to an investigator. (ECF No. 8 at 2, ¶ 2). On that same date, the plaintiff was interviewed by the Prison Rape Elimination Act Investigator, Patrick Janiszewski, who was investigating an allegation that the plaintiff was involved with a Correctional Officer named Delta Butler. (*Id.* at 3, ¶ 3). During a strip search, Janiszewski seized another letter addressed from the plaintiff to Rebecca Hart. (*Id.*)

The plaintiff further alleges that, on October 1, 2014, when he finished serving his sanction for the unrelated rule violation, Intelligence Officer Michael Shumate, "with deceptive means and retaliatory manner," appeared before the prison's Administrative Segregation Committee, consisting of Kelli Hinte, Sherrie Snyder and Cheryl Chandler,

2

and presented evidence from the letters to and from Rebecca Hart, as well as a portion of a recorded telephone conversation between the plaintiff and his mother, and asserted that Rebecca Hart was actually an alias for Correctional Officer Delta Butler. (*Id.* at 3-4, ¶ 4). The plaintiff further alleges that, as a result of this evidence and the plaintiff's prior multiple class one rule violations, the Administrative Segregation Committee placed the plaintiff into Administrative Segregation.[2]

The plaintiff's Amended Complaint then asserts that he and at least two other African-American inmates were placed in administrative segregation, while there are at least three Caucasian inmates at MOCC, whom he considers to be "similarly situated," with multiple class one rule violations, and who have been affirmatively found to have been inappropriately involved with prison staff, who were not placed in administrative segregation. The Amended Complaint identifies each of these inmates. (*Id.* at 5-7). The Amended Complaint further asserts:

> There is no rational relation for treating the petitioner differently and being a security risk, when there are Caucasian inmates who are similarly situated with multiple class one rule violations and also were involved there with a staff member or correctional officer and had received a prison rule violation in relation thereto.
>
> The petitioner had not received any prison rule violation from the unproven allegation of an involvement with Correctional Officer Butler. This does show an equal protection violation against the petitioner.

(*Id.* at 8). The Amended Complaint seeks only injunctive relief in the form of the return of the plaintiff's seized letters and his release to the general population section of the prison. (*Id.*)

---

[2] As noted in the defendants' Memorandum of Law in support of their Motion to Dismiss, placement in administrative segregation at MOCC also results in being placed on the Quality of Life Program, which takes approximately 18 months to complete in order to return to general population. (ECF No. 24 at 1, n.1).

3

*The defendants' Motion to Dismiss*

On August 10, 2015, the defendants filed a Motion to Dismiss (or in the alternative Motion for Summary Judgment[3]) (ECF No. 23). On August 18, 2015, the plaintiff filed a document which he titled "Motion for Objection to Defendants' Motion to Dismiss Amended Complaint" (ECF No. 29) and Memorandum in support thereof (ECF No. 30), which the court has construed as a Response in Opposition to the Motion to Dismiss Amended Complaint. On August 25, 2015, the defendants filed a Reply (ECF No. 32). The plaintiff filed an unauthorized Sur-Reply on August 31, 2015. (ECF No. 36). The Motion to Dismiss is ripe for adjudication.[4]

*The plaintiff's Motion for Summary Judgment and Motions for Expedited Declaratory and Injunctive Relief*

On October 21, 2015, the plaintiff filed a Motion for Summary Judgment (ECF No. 44), in which he asserts that he is entitled to judgment as a matter of law on his equal protection claim. On November 5, 2015, the defendants filed a Response to the Motion for Summary Judgment. (ECF No. 46). On January 11, 2016, the plaintiff filed an untimely Reply. (ECF No. 52). Then, on February 8, 2016, the plaintiff filed a Motion for Expedited and Injunctive Relief, reiterating his belief that he is entitled to immediate judgment as a matter of law and the injunctive relief request in his Amended Complaint. (ECF No. 54). On February 23, 2016, the plaintiff filed yet another Motion for Injunctive Relief and Declaratory Judgment (ECF No. 57).

---

[3] The defendants correctly note that, if the court elects to rely upon information outside the four corners of the Amended Complaint, such as the prison records offered by the defendants concerning the inmates that the plaintiff considers to be "similarly situated," the court must convert the motion to one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(d).

[4] By separate Order, the undersigned has denied the plaintiff's Motion for More Definite Statement and Motion to Strike (ECF No. 39), as well as other non-dispositive motions.

4

## **STANDARDS OF REVIEW**

### *Motions to Dismiss for Failure to State a Claim*

The defendants' Motion asserts that the plaintiff's Complaint fails to state a claim upon which relief can be granted, and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

The Supreme Court elaborated on its holding in Twombly in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* at 678.

The defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

### Summary Judgment

Alternatively, the defendants have filed a Motion for Summary Judgment (ECF No. 8-2) and the plaintiff has filed his own Motion for Summary Judgment. In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.,* 950 F.2d 931, 937 (4th Cir. 1991).

6

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may: (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but

must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

If a party's motion relies upon materials outside of the four corners of the Complaint to support its claim or defenses, the court may treat a motion to dismiss as one for summary judgment pursuant to Rule 56. *See Jeffers v. Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).

## ANALYSIS

At bottom, the plaintiff is disputing his placement in administrative segregation, and the roles of the various defendants in such placement, via a challenge under the Equal Protection Clause of the Fourteenth Amendment, which states in pertinent part, "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. As noted by the defendants in their Memorandum of Law in support of their Motion to Dismiss (ECF No. 24 at 8), in order to succeed on an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is <u>similarly situated</u> and that unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). [Emphasis added]. The undersigned will address the claims against each of the defendants under this standard.

### *The claims against Boggs, Janiszewski and Shumate*

The defendants' Motion to Dismiss and Memorandum of Law first contend that the plaintiff cannot state a plausible equal protection claim against defendants Boggs, Janiszewski or Shumate, because none of those individuals sat on the Administrative

8

Segregation Committee that made the decision to place the plaintiff in administrative segregation, and the plaintiff's allegations against these defendants do not otherwise give rise to a basis for an equal protection claim. (ECF No. 23 at 1; ECF No. 24 at 7-9). Concerning the conduct of defendants Boggs and Janiszewski, the defendants' Memorandum of Law states:

> In the Amended Complaint, the plaintiff alleges that defendant Boggs seized a personal letter from him and that defendant Janiszewski seized a personal letter from him and interviewed him as part of an investigation. The plaintiff does not allege that either Boggs or Janiszewski were present at the administrative segregation hearing or were responsible for the actual decision to place the plaintiff in administrative segregation. While the Amended Complaint alleges that his placement in administrative segregation was disparate treatment, and that, in such matters, there has been a difference in how similar situated Caucasian and African-American inmates have been treated, there is no similar allegation from the plaintiff that the seizure of two letters as part of an investigation and the investigation itself represent disparate treatment. There are no allegations in the Amended Complaint that there exist similarly situated inmates, who have been treated differently in regards to having their letters seized in an investigation and being subjected to investigations for compromising a staff member.

(ECF No. 24 at 8). Thus, the defendants contend that, even taken as true, the allegations in the Amended Complaint fail to state a claim upon which relief can be granted against defendants Boggs and Janiszewski, and that those defendants should be dismissed pursuant to Rule 12(b)(6).

Likewise, the defendants contend that the allegations in the Amended Complaint regarding the conduct of defendant Shumate fail to state a plausible equal protection claim and should be dismissed under Rule 12(b)(6). Their Memorandum of Law states:

> In the Amended Complaint, the plaintiff alleges that defendant Shumate testified at the administrative segregation hearing about the investigation of the plaintiff's involvement with Officer Butler. The plaintiff further alleges that defendant Shumate's testimony and evidence at the hearing were incomplete and false. The plaintiff does not allege that defendant Shumate's alleged actions were the result of the intent to treat

>the plaintiff differently based upon the plaintiff's racial identity. The plaintiff does not allege that defendant Shumate has treated other similarly situated inmates differently based on their racial identity and has done so when he has presented evidence to the Committee in other administrative segregation hearings.

(*Id.* at 9).

The plaintiff's Response in Opposition to the Motion to Dismiss ("Response") contends that the conduct of defendants Boggs, Janiszewski and Shumate "contributed to the violation of equal protection" and, therefore, they should be held liable under section 1983 for any such violation. (ECF No. 29 at 1-2; ECF No. 30 at 2-3). The plaintiff also repeatedly refers to the taking of his letters as an "illegal seizure." However, he clarifies in his Sur-Reply that he is not attempting to assert any separate illegal seizure claim. (ECF No. 36 at 1). His Sur-Reply expands on his contention that these defendants "contributed to" a violation of his right to equal protection; however, his argument therein centers on his belief that the letters were improperly taken because he was never charged with a rule violation concerning the letters or Officer Butler. (*Id.* at 2).

Because defendants Boggs, Janiszewski and Shumate did not serve on the Administrative Segregation Committee and, thus, did not make the decision to place the plaintiff in administrative segregation, the undersigned proposes that the presiding District Judge **FIND** that the Amended Complaint fails to state a plausible equal protection claim against those defendants.[5]

---

[5] Construed liberally, the plaintiff's allegations against these defendants appear to be challenging the seizure of his letters and the process leading to his placement in administrative segregation. However, the plaintiff has affirmatively stated that he is not pursing an illegal seizure claim. Furthermore, because it is well-settled that an inmate does not possess a stand-alone liberty interest in avoiding classification or placement in segregation, *see Wilkinson v. Austin*, 545 U.S. 209 (2005); *Sandin v. Conner,* 515 U.S. 472, 478 (1995); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (absent circumstances indicating an atypical and significant hardship, confinement in administrative segregation does not implicate a liberty interest), to the extent that the allegations against any of the defendants could be liberally construed to be asserting a procedural due process claim, such a claim also fails.

10

### *The claims against Hinte, Snyder and Chandler*

Turning to the plaintiff's equal protection claims against defendants Hinte, Snyder and Chandler, who were the members of the Administrative Segregation Committee that placed the plaintiff into administrative segregation on October 1, 2014, the defendants' Memorandum of Law in support of their Motion to Dismiss first addresses the standard of review of an equal protection claim challenging prison policies and actions, citing to the Fourth Circuit's decision in *Morrison v. Garraghty*, 239 F.3d 648 (4th Cir. 2001), discussed above.

Although the defendants' initial Memorandum of Law asserted that the *Garraghty* Court determined that a deferential level of scrutiny applied to prison actions such as the one in question here, in their Reply brief, the defendants clarify that, in *Johnson v. California*, 543 U.S. 499 (2005), the Supreme Court overruled *Garraghty* on that point and found that, once a plaintiff has demonstrated that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination based upon his race, the rationale behind the disparate treatment should be reviewed under the strict scrutiny standard. (ECF No. 32 at 3-4). Nevertheless, the defendants further note that the Supreme Court has also made clear that decisions surrounding prison security, classification and housing of inmates is an area to which courts should give great deference to prison administrators. *See Hewitt v. Helms*, 459 U.S. 460, 474 (1983), *see also Sandin*, supra, 515 U.S. at 482-83. (*Id.*)

The plaintiff contends that his placement in administrative segregation was based not only upon his multiple class one rule violations, but also upon unproven allegations of compromising a staff member or correctional officer, and that there are similarly

11

situated Caucasian inmates who had similar or even more class one rule violations, and who <u>had been found guilty</u> of compromising a staff member or correctional officer, but who were <u>not</u> placed in administrative segregation. The defendants' Memorandum of Law asserts that, as a stand-alone issue, the plaintiff has not alleged facts that would show that the decision to place him in administrative segregation, in light of his own history, was not reasonably related to a legitimate penological interest. (ECF No. 24 at 11). The defendants' Memorandum further asserts that, under *Garraghty*, and the well-settled Supreme Court precedent in *Turner v. Safley*, 482 U.S. 78, 89 (1987):

> an equal protection claim may require this Court to compare the reasonableness of the Committee's decision to place the plaintiff in administrative segregation in light with the Committee's decisions regarding the administrative segregation placement of other "similarly situated" inmates who were not African-American. This comparison is especially required where the plaintiff has not pled any factual allegations of discriminatory intent by the defendants, other than the cited results of other administrative segregation hearings. This comparison requires first that the plaintiff show the existence of similarly situated non-African-American inmates, who were not similarly placed in administrative segregation. The plaintiff must then show and the Court must determine whether there are facts which show that the defendants' decision to place the plaintiff in administrative segregation and to not place the similarly situated non-African-American inmates in administrative segregation, was not reasonably related to a legitimate penological interest. *Morrison v. Garraghty*, 239 F.3d at 654 ("Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.")

(ECF No. 24 at 11-12).

The defendants' Memorandum then asserts that, based upon the nature of administrative segregation review, which is similar in nature to parole decisions for the purpose of evaluating an equal protection claim, "it would be difficult to find inmates who are so 'similarly situated' that the Court could determine that similar treatment regarding administrative segregation placement is constitutionally required." *See Reffitt v. Nixon*,

12

917 F. Supp. 409, 415 (E.D. Va. 1996) ("[I]n light of the myriad of factors involved in a parole decision, '[i]t is difficult to believe that any two prisoners could ever be considered "similarly situated" for the purpose of judicial review of an equal protection claim.'" Citing *Rowe v. Cuyler*, 534 F. Supp. 297, 301 (E.D.N.Y.), *aff'd* 696 F.2d 985 (3d Cir. 1982)). (ECF No. 24 at 12). The defendants' Memorandum further states:

> The decision to place an inmate in administrative segregation is, like a parole decision, an often difficult predictive decision on how the inmate will behave in the future. Prison officials must determine whether an inmate will present a risk to the safe, secure orderly operation of the prison, if not placed in administrative segregation. It is a decision that relies on a number of factors, including the inmate's underlying crime(s), medical and mental health issues, work/educational history, prison rule violations, influences over other inmates, willingness to cooperate with prison officials, the nature of perceived threat(s) to prison interests, likelihood of those threat(s) occurring, and significance if those threat(s) occur. The decision relies on the experience and knowledge of prison administrators and cannot be reduced to a scored formula in a volatile prison environment. *See Sandin v. Connor*, 515 U.S. 472, 115 S. Ct. 2293 (1995).

(*Id.* at 12-13). Thus, the defendants assert that the plaintiff's attempt in his Amended Complaint to identify and compare four Caucasian inmates that he purports to be "similarly situated" to him and another African-American inmate is futile and fails to state a plausible Fourteenth Amendment claim. (*Id.* at 13). Their Memorandum of Law further states:

> In the present case, while class one prison rule violations, including those violations involving compromising of staff, are relevant and important to the decision to place and [sic; an] inmate in administrative segregation, there may be much variation in how such violations are viewed based upon the actual and underlying conduct of the violation(s) and the inmate's overall record. Even assuming that the plaintiff and the Caucasian inmates cited in the Amended Complaint have the same number of class one rule violations and the same number of violations for "compromising," there is no legal basis to conclude that the inmates must be treated the same or that the same conclusions must be drawn for each individual inmate."

(*Id.*).

The defendants further assert that the plaintiff has not even alleged that defendants Hinte, Snyder and Chandler were the decision-makers in the other inmates' administrative segregation hearings, which is a necessary fact in order to succeed with an equal protection claim on this basis. (*Id.* at 13-14). Their Memorandum states:

> Notwithstanding that the plaintiff and the cited Caucasian inmates are not similarly situated in the context of an administrative segregation hearing, the Amended Complaint has failed to set forth allegations that defendants Hinte, Snyder or Chandler were part of the Committees, which made the actual decisions whether to place the cited Caucasian inmates in administrative segregation. A claim that defendants Hinte, Snyder and Chandler provided disparate treatment towards the plaintiff requires factual allegations that these defendants personally were involved in the decision to not place "similarly situated," non-African-American inmates in administrative segregation, not just that the defendants decided the plaintiff's administrative segregation hearing.

(*Id.* at 14). For these reasons, the defendants contend that the plaintiff's Amended Complaint fails to state a plausible Fourteenth Amendment claim against defendants Hinte, Snyder and Chandler and, therefore, the plaintiff's claims against them should be dismissed pursuant to Rule 12(b)(6).

In pertinent part, the plaintiff's Response and Sur-Reply documents argue that the Caucasian inmates addressed in his Amended Complaint are similarly situated to him and another African-American inmate, Jeridine Marcus. The plaintiff asserts that the conduct of the Caucasian inmates was actually "more egregious" than the plaintiff's because the Caucasian inmates were actually found guilty of "compromising of staff," whereas the plaintiff was never charged or found guilty of such conduct with Officer Butler. The plaintiff then discusses the details of the institutional history of the Caucasian inmates versus that of himself and Jeridine Marcus. (ECF No. 30 at 6-8). The plaintiff's Response and Sur-Reply further contend that one or more of these defendants (Hinte, Snyder and Chandler) were a part of the Administrative Segregation Committees that reviewed each

14

of these Caucasian inmates and decided not to place them in administrative segregation. (*Id.* at 8-9; ECF No. 36 at 3-6). Accordingly, the plaintiff contends that he has alleged plausible claims against defendants Hinte, Snyder and Chandler.

The defendants' Reply reiterates that, in attempting to analyze the plaintiff's allegations under the guise of an equal protection claim, this court is "necessarily asked by the plaintiff to review each individual inmate, and then make a series of determinations as to how the various factors presented to the Administrative Segregation Committee should have been considered and whether these factors for each inmate must be considered the same." (ECF No. 32 at 4). As noted in the Reply and discussed previously *supra*, "this is an area of decision in which prison officials have been given great deference by courts." (*Id.*) (citing *Hewitt*, 459 U.S. at 474).

The implausibility of a viable Fourteenth Amendment equal protection claim on this basis has been previously addressed by other courts. In *Templeman v. Gunter*, the United States Court of Appeals for the Tenth Circuit upheld the dismissal of an equal protection claim brought by an inmate challenging his transfer to administrative segregation, stating as follows:

> As we explained above, classification decisions are discretionary. Even though the regulations offer a list of criteria to consider, DOC officials must weigh the various criteria and whatever else seems relevant in making the qualitative judgment of how to classify an individual inmate. Despite Templeman's allegations, it is "clearly baseless" to claim that there are other inmates who are similar in every relevant respect. [*Neitzke v. Williams,* 490 U.S. 319, 327 (1989)]. Not only might the DOC classify inmates differently because of slight differences in their histories, but they also might classify inmates differently because some still seem to present more risk of future misconduct than others. Templeman's claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable.

16 F.3d 367, 371 (10th Cir. 1994); *see also Keck v. Zenon*, No. 07-1100, 240 F. App'x. 815 (10th Cir. July 20, 2007). The defendants cite *Templeman* in their Reply. (ECF No. 32 at 4-5).

The undersigned believes it is unnecessary to look beyond the allegations in the Amended Complaint in order to resolve this matter; therefore, addressing these issues under the summary judgment standard is unwarranted. It is clear from the authority discussed herein that the plaintiff cannot state a plausible Fourteenth Amendment equal protection claim because, given the discretionary and individualized nature of the administrative segregation review process and the number and variation of factors that can play a role in the decision to classify an inmate in administrative segregation, the plaintiff cannot demonstrate that the Caucasian inmates to which he compares himself were so similarly situated that this court could determine that similar treatment regarding administrative segregation placement is constitutionally required. Nor has the plaintiff sufficiently alleged that such decisions were predicated on intentional or purposeful discrimination based upon race. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's allegations fail to state a plausible claim under the Fourteenth Amendment against defendants Hinte, Snyder and Chandler.

<u>The parties' Motions for Summary Judgment and other pending motions</u>

In light of the proposed findings that the plaintiff's Amended Complaint fails to state a plausible claim for relief against any of the defendants, and that dismissal of this matter under to Rule 12(b)(6) is appropriate, the presiding District Judge should further **FIND** that it is inappropriate and unnecessary to address the defendants' alternative Motion for Summary Judgment contained in ECF No. 23, or the plaintiff's Motion for Summary Judgment (ECF No. 44). The undersigned further proposes that the presiding

District Judge **FIND** that the plaintiff is not entitled to the relief requested in his Motion for Expedited Relief (ECF No. 47), his Motion for Expedited and Injunctive Relief (ECF No. 54), and his Motion for Injunctive Relief and Declaratory Judgment (ECF No. 57), all of which seek his release from administrative segregation to the general prison population and the return of his seized letters.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the defendants' Motion to Dismiss Amended Complaint (ECF No. 23) be **GRANTED**, that the plaintiff's Motion for Summary Judgment (ECF No. 44), Motion for Expedited Relief (ECF No. 47) Motion for Expedited and Injunctive Relief (ECF No. 54), and Motion for Injunctive Relief and Declaratory Judgment (ECF No. 57) be **DENIED**, and that this civil action be dismissed from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the district court and a waiver of appellate review by the circuit court of

17

appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to the plaintiff and to transmit a copy to counsel of record.

February 24, 2016

Dwane L. Tinsley
United States Magistrate Judge